Lucas Williams (Cal. Bar No. 264518)
COMMUNITY ENVIRONMENTAL LAWYERS, PC
3360 Rockview Court
San Luis Obispo, CA 93401
Telephone: (707) 849-5198
Email: lucas@celpc.org

Attorneys for Plaintiff
*CALIFORNIA COMMUNITIES AGAINST TOXICS*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COMMUNITIES AGAINST TOXICS, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>[Freedom of Information Act, 5 U.S.C. §§ 552, *et seq*.] |

California Communities Against Toxics ("CCAT") alleges as follows:

**INTRODUCTION**

1. This lawsuit concerns the United States Environmental Protection Agency's failure to comply with the Freedom of Information Act's ("FOIA") mandatory deadlines. FOIA allows an aggrieved party to seek relief when FOIA's deadlines are missed and, as a result, records are unlawfully withheld. 5 U.S.C. § 552(a)(4)(B).

2. CCAT submitted a FOIA request to EPA on August 17, 2026. As of this filing, EPA has not provided CCAT with a complete initial determination on CCAT's request as required by FOIA. Initial determinations must inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions. EPA has also not produced a single responsive record. Thus, CCAT seeks declaratory and injunctive relief to remedy EPA's FOIA violations.

3. The records CCAT seeks under FOIA concern EPA's response to a chemical disaster caused by a fire at Lineage, Inc.'s cold-storage facility in the Boyle Heights neighborhood of Los Angeles at 1400 Los Palos St, Los Angeles, CA 90023 (the "Facility"). Following the fire that erupted in June 2026, the Facility has been continuously emitting massive quantities of ammonia, which was stored at the Facility, into the air, as well as dozens of other toxic and hazardous substances. The Facility's ammonia and other emissions are presently contaminating the surrounding neighborhoods, creating severe health impacts including bloody noses, difficulty breathing, blurred vision, eye swelling, irritation, and running, upper respiratory irritation, persistent coughs pneumonia, skin rashes and irritation. Air monitoring has demonstrated that the ammonia levels and levels of other pollutants in the neighborhoods surrounding the Facility are hundreds of times the normal background levels.

4. Due to the exigency of the ongoing chemical disaster, and the dire need to protect the community from continuing toxic pollution, CCAT's August 17, 2026 FOIA

request sought: “all records regarding monitoring data on the Lineage Fire including but not limited to:

A. All ground-based monitoring data related to air pollution, any weather data that was included, any plume modeling data, drone monitoring data for air pollution, infrared monitoring, and all occupational health monitoring data for all pollutants.

B. All communications from the On Scene Coordinator and the City of Los Angeles and the County of Los Angeles including their elected leaders, the Fire department, the health department and the Department of Water and Power.”

The time period for the records is June 17, 2026 to August 17, 2026. The records sought would provide CCAT, other concerned entities, and the affected communities with important information concerning the extent of the chemical contamination.

5. EPA has violated FOIA by: (1) failing to issue a complete initial determination on CCAT’s FOIA request in compliance with FOIA’s mandatory twenty-business-day (plus 10-day extension for unusual circumstances) deadline; (2) improperly withholding agency records that are responsive to the FOIA request; and (3) failing to conduct an adequate search for records that are responsive to the FOIA request.

6. EPA’s FOIA violations have thwarted CCAT’s efforts to timely receive records in EPA’s possession, have hampered CCAT’s efforts to serve as an effective public interest watchdog over the EPA’s activities, and threaten to interfere with CCAT’s ability to use the records in its ongoing advocacy efforts related to alerting the public of issues concerning health risks from the Lineage chemical disaster.

## JURISDICTION

8. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B), which allows an aggrieved party to seek relief when agencies violate FOIA and authorizes a reviewing court to enjoin the agency from withholding records and to order the production of any agency records improperly withheld from the complainant. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty).

9. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has authority to grant injunctive relief pursuant to 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

10. The FOIA claims made in this complaint are ripe for judicial review and the harm EPA has caused to CCAT can be remedied by an order of this Court.

11. This Court has personal jurisdiction over EPA and its officials because EPA is an agency of the federal government operating within the United States.

## VENUE

12. Venue in the United States District for the Central District of California is proper under 5 U.S.C. § 552(a)(4)(B) because EPA has offices in Los Angeles where some of the pertinent records sought by CCAT may be stored.

## THE PARTIES

13. Plaintiff CALIFORNIA COMMUNITIES AGAINST TOXICS is a non-profit environmental justice organization that works to protect communities from industrial pollutants. CCAT's members are located throughout the Boyle Heights neighborhood where the chemical disaster is taking place. EPA's air monitoring and communications regarding the chemical disaster caused by the Facility are a matter of great public interest. The environmental contamination caused by the fire has been widely covered in major publications including the New York Times. *See* New York

Times, *The Rotting Food Is Nearly Gone, but Los Angeles Isn't Ready to Forgive* (August 30, 2026) available at https://www.nytimes.com/2026/08/30/us/los-angeles-warehouse-fire-boyle-heights-rotting-food.html (last visited October 5, 2026). CCAT has vast expertise evaluating the federal government's responses to chemical disasters. CCAT has a proven track record of publicizing the information it has obtained via FOIA requests. For instance, CCAT works closely with reporters at publications such as the New York Times and Los Angeles Times. CCAT has a long history of providing information to the public via media publications which disseminate the information to a national audience.

14. To further its environmental justice goals, CCAT seeks to enforce federal and state laws regarding toxic exposures, and as necessary initiates enforcement actions on behalf of itself and its members. CCAT uses FOIA as an important avenue for gaining information about federal agency activities pertinent to its environmental justice mission. CCAT is harmed when it is denied timely access to records which it is entitled to. Without this information, CCAT cannot successfully serve as an effective public interest watchdog ensuring that the federal government is lawfully fulfilling its legal obligations, commitments, and acting in the public interest.

15. Any person or entity that files a FOIA request is deemed to have standing to invoke the jurisdiction of the federal courts to carry out the judicial review provisions of FOIA. CCAT filed the FOIA request at issue and has standing to bring this FOIA suit.

16. CCAT brings this action on its own behalf and on behalf of its adversely affected members and staff. CCAT works in furtherance of its goals in part by acquiring information regarding industrial chemical exposures such as the Lineage chemical disaster through FOIA. CCAT then compiles and analyzes that information and disseminates that information to the general public and public officials through various sources. CCAT's successful efforts at educating the public on chemical exposures from the Lineage fire contribute significantly to CCAT's mission. CCAT also uses the

information that it acquires through FOIA to participate in federal decision-making processes, to file civil actions, and generally to ensure that federal agencies comply with environmental laws.

17. CCAT intends to continue its use of FOIA to access agency records in EPA's possession. For example, CCAT has concrete plans to submit additional FOIA requests to the EPA to follow up on the information learned while reviewing agency records responsive to the present FOIA request. CCAT also intends to continue to use FOIA to access agency records in EPA's possession to obtain information pertinent to the adverse impacts of the Lineage fire on the Boyle Heights community. CCAT has been conducting extensive and direct community outreach to the Boyle Heights community impacted by the fire including hosting community meetings and webinars to inform the community about the environmental and public health impacts from the fire.

18. EPA has not previously published its monitoring data or communications regarding its response to the chemical disaster. Given the immense public interest in understanding the nature and scope of the Facility's chemical releases, publicization of EPA's monitoring and communications regarding the fire will contribute significantly to the public's understanding of the chemical disaster.

19. One of the purposes of FOIA is to promote the active oversight role of public advocacy groups incorporated in many federal laws applicable to federal agencies. CCAT uses FOIA to publicize activities of federal agencies and to mobilize the public to participate in advocacy to elected and other government officials concerning environmental and public health policy. CCAT intends to continue using FOIA requests to fulfill its oversight and advocacy role through scrutinizing agency records, a practice Congress intended to promote through the adoption of FOIA. CCAT's FOIA request seeks to gain information related to EPA's actions and evaluations related to the Lineage fire. CCAT is harmed by EPA's failure to timely produce the records requested on August 17, 2026 particularly given the ongoing contamination from the fire that is

presently impacting the community's health and well-being. This harm can be remedied ensuring CCAT and other requesters have prompt access to public records going forward.

20. CCAT has and will suffer direct injury by the EPA's failure to comply with the statutory requirements of FOIA, and a favorable outcome of this litigation will redress that injury. EPA's refusals to timely provide FOIA access to agency records impedes CCAT's ability to participate as an informed environmental and public health watchdog. Harm to the environment and to people flows from EPA's FOIA violations, which conceal the facts and circumstances surrounding the chemical disaster caused by the Lineage fire.

21. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is an agency as defined by 5 U.S.C. § 552(f)(1) that acts as the legal representation for the United States. FOIA charges EPA with the duty to provide public access to agency records in its possession or control. EPA possesses records responsive to CCAT's FOIA Request. EPA is denying CCAT access to its records in contravention of federal law.

22. EPA failed to lawfully make an initial determination on CCAT's August 17, 2026 FOIA Request within the statutory twenty-business-days (plus 10-day extension for unusual circumstances) deadline. As of this filing, EPA possesses, controls, and unlawfully withholds agency records and information in agency records responsive to CCAT's FOIA request that is not subject to a FOIA exemption and/or release of which would not cause foreseeable harm. As of this filing, EPA has not completed a FOIA-compliant search for records responsive to the FOIA request.

## STATUTORY AND REGULATORY BACKGROUND

23. FOIA gives individuals a judicially-enforceable right of access to government agency documents. *Lion Raisins v. U.S. Dep't of Agric.,* 354 F.3d 1072, 1079 (9th Cir. 2004) (citing 5 U.S.C. § 552). The Supreme Court has interpreted the disclosure provisions of FOIA broadly: the statute is animated by a "philosophy of full agency

disclosure." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989); *see also Dep't of the Air Force v. Rose,* 425 U.S. 352, 361 (1976) ("disclosure, not secrecy, is the dominant objective of the Act").

24. FOIA requires an agency to make an initial determination within 20 days of receiving a request or within 30 days under unusual circumstances. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i); *see also Aguirre v. United States Nuclear Regul. Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n (CREW)*, 711 F.3d 180, 182 (D.C. Cir. 2013). The initial determination "must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks. It is not enough that, within the relevant time period, the agency simply decide to later decide. Therefore, within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *CREW*, 711 F.3d at 186; *accord Aguirre*, 11 F.4th at 726 n.1 (citing to *CREW* as "delineating the requirements for a proper response").

25. Unusual circumstances involve complications such as the need to search for documents in multiple facilities, "a voluminous amount of separate and distinct records" for a single request, or the need to consult with another agency. 5 U.S.C. § 552(a)(6)(B)(iii).

26. An agency, upon any request for records, shall promptly make the records available. 5 U.S.C. § 552(a)(3)(A). "Promptly available" means "within days or a few weeks . . . not months or years." *CREW*, 711 F.3d at 188.

27. An agency's failure to comply with FOIA's deadlines is—by itself—a violation of FOIA. *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1198 (N.D. Cal. 2020). The consequences of noncompliance include: (1) constructive exhaustion of the requester's administrative remedies, enabling immediate

suit, 5 U.S.C. § 552(a)(6)(C)(i), *Corbett v. Transportation Sec. Admin.*, 116 F.4th 1024, 1026 (9th Cir. 2024); (2) the agency's inability to assess search fees if it fails to comply with any time limit, unless unusual or exceptional circumstances apply, 5 U.S.C. § 552(a)(4)(A)(viii)(I); and (3) injunctive relief ordering the agency to produce records within a specified period or to increase its rate of processing, *Am. C.L. Union Found. of S. California v. United States Immigr. & Customs Enf't*, 705 F. Supp. 3d 1077, 1090-1092 (C.D. Cal. 2023), *Long v. U.S. I.R.S.*, 693 F.2d 907, 909-910 (9th Cir. 1982).

28. FOIA requires that an agency disclose records to any person except where the record falls under a specifically enumerated exemption. These exemptions are construed narrowly given "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

29. When an agency decides to withhold records under a claim of exemption, it must notify the requestor of that determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i). Agencies bear the burden of proof to show that any withheld records are exempt from the otherwise complete duty to disclose. 5 U.S.C. § 552(a)(4)(B).

30. The FOIA Improvement Act of 2016 made significant amendments to FOIA, effective as of enactment on June 30, 2016. The amendments include changes to the standard by which EPA must evaluate potential withholdings. The Act states that agencies shall withhold information only if disclosure would harm an interest protected by an exemption—what is referred to as the "foreseeable harm standard"—even if that information is arguably subject to an exemption claim by the agency. 5 U.S.C. § 552(a)(8)(A)(i).

31. An agency must provide the requester with enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and "the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i).

32. FOIA also requires an agency to consider partial disclosure whenever the agency determines that full disclosure of a requested record is not possible and to take reasonable steps necessary to segregate and release nonexempt information. 5 U.S.C. § 552(a)(8)(A).

33. In addition to explicit withholdings, an agency's process for addressing FOIA requests also constitutes "withholding" if its net effect is to significantly impair the requester's ability to obtain the records or significantly increase the amount of time he or she must wait to obtain them. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983), *vacated in part on other grounds*, 711 F.2d 1076 (1983).

34. Agencies are under a duty to conduct a reasonable search for records responsive to a party's request using methods that can be reasonably expected to produce the records requested to the extent those records exist. 5 U.S.C. § 552(a)(3)(C).

35. Given the time-sensitive nature of FOIA requests, FOIA litigation is subject to expedited judicial consideration. Unlike other civil litigation involving a federal agency, a responsive pleading is required within thirty days of service. 5 U.S.C. § 552(a)(4)(C).

## **FACTUAL BACKGROUND**

36. On August 17, 2026, CCAT submitted its FOIA request to EPA via EPA's official FOIA Public Access Link. EPA received the request on August 19, 2026. More than 30 business days have passed since EPA received the request. However, EPA has not provided CCAT with an initial determination on the request.

37. CCAT's request seeks records regarding the chemical disaster caused by the Lineage fire. CCAT requested all records regarding modeling and air monitoring related to the fire, as well as EPA's communications with local agencies responsible for responding to the fire.

38. On August 19, 2026, CCAT received a "Fee Waiver Determination" letter from EPA in which EPA denied CCAT's request for a fee waiver.

39. On August 20, 2026, CCAT received an "acknowledgment" email from EPA. The email confirmed that EPA had received the CCAT's request on August 19, 2026. The email said that the "request was received and assigned for processing." The email did not state whether EPA would produce records responsive to the request, or whether EPA would withhold records responsive to the request. The email also did not provide an estimated completion date for EPA's record production.

40. On September 10, 2026, CCAT received a letter from EPA regarding its "Request for Written Assurance of Payment and Extension of Processing Time." In the letter, EPA demanded payment of $1,300 before it would begin processing CCAT's FOIA request. In addition, EPA invoked a 10-day unusual circumstances extension on the basis of its "need to search for and collect the requested records from multiple EPA offices that are separate from the office processing this request." The letter stated that "the estimated date of completion of your request is November 20, 2026."

41. On September 11, 2026, CCAT filed an appeal of EPA's denial of the fee waiver.

42. On September 15, 2026, CCAT sent an email to EPA stating: "The denial of the fee waiver has been appealed, as you may know. CCAT, a nonprofit environmental justice organization, will not be providing an assurance of payment because the denial of the fee waiver was unlawful. Given that EPA has invoked the unusual circumstances extension, we look forward to receiving a compliant final determination regarding CCAT's FOIA request by October 1, 2026. If we do not receive all non-exempt responsive records promptly thereafter, we will be filing suit. The November 20, 2026 extension is unacceptable given that CCAT's request seeks a discrete set of records that should be readily available to EPA in Region 9. EPA has not demonstrated that it requires over three months to respond to this simple FOIA request. Finally, we are willing to discuss the scope of the request if that would facilitate prompt production of records. Please let me know your availability." EPA did not respond to this email.

43. On September 30, 2026, EPA informed CCAT that no fees would be charged for CCAT's request.

44. On October 1, 2026, having not received an initial determination, CCAT informed EPA by email that CCAT would be filing this lawsuit. EPA did not respond to this email.

45. EPA's initial determination on CCAT's FOIA request was due by October 1, 2026. *See* 5 U.S.C. § 552(a)(6)(A)(i). As of this filing, EPA has not made an initial determination on CCAT's FOIA request. This is both a violation of FOIA's deadlines and a constructive withholding of records.

46. As of this filing, EPA has failed to produce a single responsive record. As a result, as of this filing, EPA currently possesses or controls, and is withholding agency records that are responsive to CCAT's FOIA request and are not subject to a FOIA exemption. EPA's withholding of these agency records is unlawful.

47. Moreover, CCAT alleges on information and belief that the documents are in EPA's possession, custody, or control because, among other things, EPA on July 31, 2026 issued an "Information Request" to Lineage that seeks many of the same documents from Lineage that CCAT seeks from EPA.

48. As of this filing, EPA has failed to complete a FOIA compliant search for records responsive to the FOIA Request.

49. CCAT now turns to this Court to provide relief that ensures CCAT and the public have prompt public access to agency records guaranteed by FOIA. 5 U.S.C. § 552(a)(6).

## <u>FIRST CLAIM FOR RELIEF</u>

### Violation of FOIA—Constructive Denial, Violation of Decision Deadlines, and Unlawful Withholding of Agency Records Responsive to the FOIA Request

50. CCAT repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

51. EPA has not timely provided CCAT with a lawful initial determination on CCAT's request. EPA has not communicated to CCAT the scope of the records it intends to produce or withhold in response to the FOIA request. Nor has EPA provided its reasons for withholding any records.

52. EPA has not produced any records responsive to the CCAT's request.

53. EPA violated FOIA by failing to provide a lawful initial determination on CCAT's August 17, 2026 FOIA request within the statutory thirty-business-day period. 5 U.S.C. § 552(a)(6)(A)(i).

54. This failure to make a lawful determination on CCAT's FOIA request in compliance with FOIA's deadlines is a constructive denial and wrongful withholding of the records CCAT requested in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i), (C)(i).

55. EPA continues to violate FOIA by not making responsive records promptly available to CCAT. 5 U.S.C. § 552(a).

**<u>SECOND CLAIM FOR RELIEF</u>**

**Violation of FOIA—Unlawfully Withholding Agency Records Responsive to the FOIA Request that are Not Subject to a FOIA Exemption and/or Disclosure of Which Would Not Cause Foreseeable Harm**

56. CCAT repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

57. CCAT has a statutory right to the records it seeks. There is no legal basis for EPA to assert that any of FOIA's nine disclosure exemptions apply. *See* 5 U.S.C. § 552(b)(1)-(9).

58. Disclosure of these records would also not cause foreseeable harm. *See* 5 U.S.C. § 552(a)(8)(A)(i).

59. EPA continues to violate FOIA by illegally withholding agency records that are responsive to the FOIA request, but which EPA has not demonstrated are subject to any FOIA withholding provision; which, on information and belief, are not subject to any

such provision; and, on information and belief, disclosure of which would not cause foreseeable harm. 5 U.S.C. § 552(b), (a)(8)(A)(i).

## THIRD CLAIM FOR RELIEF

### Violation of FOIA—Failure to Conduct an Adequate Search

60. CCAT repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

61. CCAT has a statutory right to have EPA process its FOIA Request in a manner that complies with FOIA. CCAT's statutory rights in this regard were violated when EPA unlawfully failed to undertake a search reasonably calculated to locate records responsive to the FOIA Request.

62. EPA continues to violate FOIA by failing to conduct and document a lawful search for responsive records. On information and belief, EPA has withheld responsive agency records due to an unlawfully narrow search. 5 U.S.C. § 552(a)(3)(B)-(C).

## REQUEST FOR RELIEF

CCAT respectfully requests that this Court enter judgment providing the following relief:

A. Enter findings and declare that EPA violated its duty to comply with FOIA's statutory deadlines with regard to CCAT's FOIA request;

B. Enter findings and declare that EPA violated FOIA by unlawfully withholding agency records responsive to CCAT's FOIA request;

C. Enter findings and declare that EPA violated FOIA by failing to conduct a search reasonably calculated to locate the records responsive to CCAT's FOIA request;

D. Order that EPA provide CCAT a lawful determination on CCAT's FOIA request;

E. Order that EPA conduct a lawful search for responsive records;

F. Order that EPA promptly provide all agency records responsive to CCAT's FOIA request that are not properly subject to withholding under one of the nine recognized FOIA exemptions and/or for which EPA cannot show foreseeable harm;

G. Order that EPA provide CCAT with a detailed statement justifying each withholding of an agency record, or portions thereof, in accordance with the indexing requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974);

H. Grant CCAT's costs of litigation, including reasonable attorney fees as provided by FOIA, 5 U.S.C. § 552(a)(4)(E); and

I. Provide such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 5, 2026

COMMUNITY ENVIRONMENTAL LAWYERS, PC

*/s/ Lucas Williams*
Lucas Williams
*Attorneys for Plaintiff*
*California Communities Against Toxics*